# EXHIBIT 1

## SETTLEMENT AND RELEASE AGREEMENT

THIS SETTLEMENT AND RELEASE AGREEMENT ("Agreement") is made and entered into by and between ESMERALDA RODRIGUEZ ("Employee") and C.Q. INSULATION, INC. d/b/a INSTALLED BUILDING PRODUCTS, LLC ("Company"). Employee and the Company are sometimes collectively referred to as the "Parties" and, individually, as a "Party."

### RECITALS

**WHEREAS,** disputes have arisen between Employee and the Company arising out of, or related to, Employee's relationship with the Company; and

**WHEREAS,** as a result of said disputes, Employee filed a lawsuit in the United States District Court, Middle District of Florida, Tampa Division, styled *Esmeralda Rodriguez v. C.Q. Insulation, Inc. d/b/a Installed Building Products, LLC*, Case No. 8:16-cv-02977-JSM-MAP (the "Lawsuit"); and

**WHEREAS,** the Company expressly denies the allegations contained in the Lawsuit, including any alleged failure to pay Employee all appropriate overtime under the Fair Labor Standards Act ("FLSA"); and

**WHEREAS,** the Parties hereto have deemed it prudent and advisable to settle all disputes and claims of whatsoever kind and nature and arising from any course or reason whatsoever on account of, or as in any way arising out of, acts and/or omission prior to the Effective Date of this Agreement.

**NOW, THEREFORE,** in consideration of the respective obligations and undertakings hereinafter set forth, the Parties agree as follows:

1. **Payment to Employee.** In consideration for the promises made herein and in full and final settlement and in satisfaction of any and all claims Employee has or had against Company as of the Effective Date of this Agreement, Company shall pay Employee the total gross amount of Twelve Thousand and 00/100 Dollars ($12,000.00) (the "Settlement Proceeds"). The Settlement Proceeds will be allocated as follows:

    a. A check in the amount of Three Thousand and 00/100 Dollars **($7,000.00)** made payable to Employee, representing payment in full of Employee's alleged unpaid wages ($6,000.00), as well as consideration for Employee's general release in Paragraph 4 below ($1,000.00) for which Company will issue Employee an IRS Form W-2;

    c. A check in the amount of Five Thousand and 00/100 Dollars **($5,000.00)** made payable to Attorney Luis A. Cabassa's law firm of Wenzel Fenton Cabassa, P.A., 1110 North Florida Avenue, Suite 300, Tampa, FL 33602, as final payment of all of Employee's attorneys' fees, paralegals' fees and costs incurred in the prosecution of the Lawsuit, for which Company will issue an IRS Form 1099.

Payment of the Settlement Proceeds shall be made within ten (10) business days of the Court's entry of an order approving this Agreement and dismissing the Lawsuit with prejudice. Employee acknowledges that this amount constitutes good, valuable, and adequate consideration for her covenants and obligations set forth herein, that she has or may have by reason of her employment relationship with the Company. Employee agrees and acknowledges that the Company has paid her any and all other amounts to which she was entitled as an employee for the Company.

2.  **No Other Compensation**. Except as described in this Agreement, Employee shall not be entitled to any other compensation (including further participation in any benefit plans) in connection with the Lawsuit. Employee further represents and warrants that she will hold harmless and indemnify the Company of and from any and all claims, actions, demands, penalties, costs, and expenses, excluding only attorneys' fees, arising from her failure to pay all appropriate taxes and other legal withholdings associated with the above payments as required by law.

3.  **Neutral Reference**. Should any potential future employers of Employee contact the Company, the Company will only provide her title and dates of employment, provided Employee or a person seeking the reference of Employee directly contact the Department of Human Resources for this reference. This provision of a neutral reference is in consideration for Employee's releases made in Paragraph 4(a).

4.  **Releases**.

    (a) Employee does hereby for herself and for her heirs, devisees, executors, administrators, personal representatives, legal representatives, beneficiaries, successors (including successors in any fiduciary capacity), assigns, and any and all other persons who might ever claim by, through or under him, acting as such (collectively, the "Employee Related Persons"), release, acquit, and forever discharge the Company, together with any and all affiliated or related businesses or corporations, as well as its and their predecessors, parents, subsidiaries, affiliates, agents, officers, directors, management, shareholders, employees, representatives, and attorneys, whether past or present, both known and unknown, in both their individual and agency capacities (collectively, the "Company Entities"), jointly and severally, from any and all claims, demands, losses, proceedings, costs, expenses, causes of action, orders, obligations, contracts, agreements, debts, and liabilities whatsoever, whether known or unknown, suspected or unsuspected, at both law and equity, arising from the beginning of time through and including the Effective Date (collectively, "Claims"), including, but not limited to, any and all Claims and/or demands for back pay, reinstatement, hire or re-hire, front pay, stock options, group insurance, or employee benefits of whatsoever kind (except on rights expressly provided for herein), any and all Claims for monies or expenses, any and all Claims arising out of or relating to the cessation of Employee's employment relationship with Company, any and all Claims for breach of contract or Employee's failure to obtain employment at any other Company or with any other person or employer, any and all Claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Employee Retirement Income Security Act of 1974, as amended, the Americans with Disabilities Act, as amended, the Fair Labor Standards Act, or any Florida labor and employment law (including any law concerning unlawful and unfair labor and employment practices), and any and all Claims for wrongful termination, public policy, tort,

2

retaliation, breach of contract, tortious interference, defamation, intentional or negligent infliction of emotional distress and/or demands for attorneys' fees and legal expenses.

(b)  Employee warrants and represents that the representative Claims and rights released under this Agreement have not been assigned in whole or in part.

5.  **Covenant Not to Sue**.  Employee covenants and agrees that Employee will not bring, commence, institute, maintain, or prosecute any action or proceeding or otherwise prosecute or sue the Company either affirmatively or by way of cross complaint, defense, or counterclaims, or in any other manner with respect to the Claims herein released.  The foregoing sentence shall be construed as a covenant not to sue.  This Agreement may be introduced as evidence at any legal proceeding as a complete defense to any claims ever asserted by Employee against the Company Entities.

6.  **The Lawsuit.**  Employee understands and acknowledges that this Agreement is part of a final resolution of the Lawsuit.  Employee will cause to be filed an Agreed Stipulation of Dismissal with Prejudice indicating that the Lawsuit has been settled, dismissing the case with prejudice.  Employee further shall dismiss with prejudice any and all other pending proceedings, charges, claims, demands, causes of action, appeals, and/or actions which have been heretofore instituted by or on her behalf against the Company Entities.

7.  **Confidential Information**.  Employee shall continue to hold in a fiduciary capacity for the benefit of the Company all secret or confidential information, knowledge or data relating to the Company or any of its affiliated companies, and their respective businesses (including all information, knowledge or data relating to customers or clients or potential customers or clients of the Company or any of its affiliated companies), which shall have been obtained by Employee during Employee's employment relationship with the Company or any of its affiliated companies and which shall not be or become public knowledge (other than by acts by Employee or representatives of Employee in violation of this Agreement) (collectively, "Confidential Information").  Employee shall not, without the prior written consent of the Company or as may otherwise be required by law or legal process, communicate or divulge any Confidential Information to anyone other than the Company and those designated by it or to an attorney retained by Employee.

8.  **Non-Disparagement**.  Employee agrees not to defame the reputation of the Company in any way, including, without limitation, through any communications with other individuals, companies, associations, or the media.

9.  **Non-Interference**.  Nothing in this Agreement shall interfere with Employee's right to file a charge or to cooperate or participate in an investigation or proceeding conducted by any federal or state regulatory or law enforcement agency.  However the consideration provide to Employee in this Agreement shall be the sole relief provided to Employee for the Claims that are released by Employee herein and Employee will not be entitled to recover against the Company Entities in connection with any such claim, charge or proceeding without regard to who has brought such claim, charge, or proceeding.

3

10. **Right to Communicate Directly with Governmental or Self-Regulatory Bodies**. Nothing in this Agreement, specifically Paragraphs 7 and 8, prohibits or in any way restricts Employee from communicating directly with, cooperating with or providing information to the U.S. Securities and Exchange Commission or any other governmental or regulatory body or any self-regulatory organization for the purpose of communicating about possible securities law violations or making other disclosures that are protected under applicable law or receiving awards from or by a government agency for providing information. Employee does not need the prior authorization of the Company before taking such actions and is not required to inform the Company if she does so.

11. **Employee's Acknowledgment**. Employee acknowledges that Employee has been advised in writing to consult with an attorney before signing this Agreement, has in fact consulted and been advised by an attorney, and has been afforded a reasonable period of time to consider the terms of this Agreement prior to signing this Agreement. Employee acknowledges that no representation, promise, or inducement has been made other than as set forth in this Agreement, and that Employee enters into this Agreement without reliance upon any other representation, promise or inducement not set forth herein. Employee acknowledges and represents that Employee assumes the risk for any mistake of fact now known or unknown, has the capacity to enter into this Agreement and that Employee understands and acknowledges the significance and consequences of this Agreement. Employee further acknowledges that she has read this Agreement in its entirety, that she fully understand all of its terms and their significance, and that she has signed in voluntarily and of her own free will. Moreover, Employee acknowledges that she is of sound mind and that there has been no undue influence, overreaching, collusion, or intimidation in connection with this Agreement.

12. **Counterparts**. This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original expression of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement. Execution by facsimile or electronically constitutes an original execution of this Agreement.

13. **Invalidity**. The Parties agree that the invalidity or unenforceability of any provision or part of this Agreement shall not render any other provision(s) or part(s) hereof invalid or unenforceable and that such other provision(s) or part(s) shall remain in full force and effect.

14. **Governing Law**. This Agreement shall be governed under the laws of the State of Florida. Any filing relating to the enforcement of this Agreement shall be filed with Judge James S. Moody, Jr. in the United States District Court for the Middle District of Florida, Tampa Division.

15. **Binding Successors/Assignment**. This Agreement together with any amendments hereto, shall be binding upon and shall inure to the benefit of the Parties hereto and respective successors, assigns, heirs, and personal representatives, except that the rights and benefits of Employee under this Agreement are personal in nature and may not be assigned without prior written consent of the Company.

16. **Preservation of Rights/Waiver**. No failure by either Party to insist upon compliance with any term of this Agreement, to exercise any option, enforce any right, or seek any remedy, upon any default of any other Party shall affect or constitute a waiver of the first Party's right to insist upon any such strict compliance, exercise that option, enforce that right, or seek that remedy with respect to any default; nor shall any custom or practice of the Parties at variance with any provision of this Agreement affect or constitute a waiver of any Party's right to demand strict compliance with all provisions of this Agreement.

17. **Entire Agreement/Written Amendments**. This Agreement represents the entire agreement between the Parties hereto on the matters expressly addressed herein, and there are no understandings between the Parties other than those specifically and particularly set forth in this Agreement. This Agreement shall not be amended or modified in any manner except upon written agreement signed by the Parties.

18. **Effective Date of the Settlement and Release Agreement**. This Agreement shall become effective upon the execution of this Agreement by Employee.

**[SIGNATURE PAGE TO FOLLOW]**

CAUTION TO EMPLOYEE: READ BEFORE SIGNING. THIS DOCUMENT CONTAINS A RELEASE OF ALL CLAIMS PRIOR TO THE EFFECTIVE DATE OF THIS AGREEMENT.

IN WITNESS WHEREOF, Employee and the Company have executed this Agreement, effective as of the Effective Date of the Agreement.

| DATE OF EXECUTION BY EMPLOYEE ("Effective Date of this Agreement" is the date of Employee's signature) | AGREED TO AND ACCEPTED BY: |
|---|---|
| 3-15-17 | *Esmeralda Rodriguez* (signature)<br>ESMERALDA RODRIGUEZ<br>"Employee" |

| DATE OF EXECUTION BY COMPANY | AGREED TO AND ACCEPTED BY: |
|---|---|
| | [INSERT NAME]<br>[INSERT TITLE]<br>C.Q. INSULATION, INC. d/b/a<br>INSTALLED BUILDING PRODUCTS, LLC<br>"Company" |

6

CAUTION TO EMPLOYEE: READ BEFORE SIGNING. THIS DOCUMENT CONTAINS A RELEASE OF ALL CLAIMS PRIOR TO THE EFFECTIVE DATE OF THIS AGREEMENT.

IN WITNESS WHEREOF, Employee and the Company have executed this Agreement, effective as of the Effective Date of the Agreement.

| DATE OF EXECUTION BY EMPLOYEE ("Effective Date of this Agreement" is the date of Employee's signature) | AGREED TO AND ACCEPTED BY: |
|---|---|
| _____ | _____ <br> ESMERALDA RODRIGUEZ <br> "Employee" |

| DATE OF EXECUTION BY COMPANY | AGREED TO AND ACCEPTED BY: |
|---|---|
| _____3/23/17_____ | _____/s/ Jason Lawson_____ <br> JASON LAWSON <br> Human Resources Director <br> C.Q. INSULATION, INC. d/b/a <br> INSTALLED BUILDING PRODUCTS, LLC <br> "Company" |

6